UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MEGAN SCHETTER,

      Plaintiff,

v.                                                                            Case No. 15-C-1063

NEWCOMER FUNERAL SERVICE GROUP, INC.,

      Defendant,

v.

LYNDAHL FUNERAL HOME, INC.,

      Third-Party Defendant.

---

## DECISION AND ORDER

---

      Plaintiff Megan Schetter brought this diversity action against Newcomer Funeral Home, her former employer, seeking a declaration that the employment agreement she entered into on May 21, 2014 is void under Wisconsin law as an impermissible restrictive covenant. Newcomer, a Kansas corporation with its principal place of business in Topeka, filed an answer, a counterclaim against Schetter, and a third-party complaint against Lyndahl Funeral Home, Schetter's current employer. Lyndahl and Schetter, both Wisconsin citizens, subsequently filed a motion to dismiss, and that motion is presently before me. For the reasons given below, the motion will be granted in part and denied in part.

      Schetter was the managing funeral director at Newcomer's Green Bay location. On May 21, 2014, more than two years after she began working for Newcomer, she was asked to sign an

agreement prohibiting her from working for a competitor, within "a radius of 25 miles of the funeral home in which Employee is employed or any other location owned or operated by any of the corporations first listed above." (ECF No. 1-1 at ¶ 7(a).) The preamble of the agreement listed Newcomer Funeral Service Group, Inc., as well as Heartland Management Company and Warren Family Funeral Homes. The non-compete clause was to be effective for two years following termination of the agreement. (*Id.*) The agreement also contained a severability clause and a provision stating that the agreement would be governed by Kansas law. Schetter signed the agreement and received a thousand dollars.

**I. Analysis**

At the outset, a procedural point needs explanation. Although the motion is styled as a motion to dismiss the third-party complaint and the counterclaims, the brief asserts that the "entire case" should be "dismissed." (ECF No. 17 at 3, 13.) Coming from Schetter, the Plaintiff who brought the action in the first place, dismissal is an unusual request. Instead, I will construe the motion as one seeking judgment on the pleadings. In essence, Schetter and Lyndahl (collectively "the Movants") assert that Newcomer's defenses and claim for breach of contract are meritless because the underlying agreement is void—exactly the same basis for Schetter's claim seeking a declaratory judgment. Thus, if she wins her motion, it would be a declaratory judgment she receives, not merely dismissal of the action.[1]

---

[1] Perhaps recognizing this, elsewhere in the brief the Plaintiff states that "Newcomer's claims must be dismissed, and Schetter is entitled to judgment as a matter of law." (ECF No. 17-7.)

**A. Choice of Law**

The first question is whether Wisconsin or Kansas law applies. As noted above, the contract provides that the governing law comes from Kansas, but the Movants assert that Wisconsin courts will not honor such choice-of-law clauses if they are in violation of fundamental Wisconsin public policy or statute. "[S]tatutes or common law which make a particular type of contract enforceable, e.g., usury laws, or which make a particular contract provision unenforceable, e.g., laws prohibiting covenants not to compete, or that are designed to protect a weaker party against the unfair exercise of superior bargaining power by another party, are likely to embody an important state public policy." *Bush v. Nat'l Sch. Studios, Inc.,* 139 Wis. 2d 635, 643, 407 N.W.2d 883, 887 (1987). "Accordingly, if Wis. Stat. § 103.465 applies to this action public policy concerns would mandate overriding the parties' contractual choice of law stipulation." *Cty. Materials Corp. v. Allan Block Corp.,* 431 F. Supp. 2d 937, 950 (W.D. Wis. 2006).

In *Beilfuss v. Huffy Corp.,* the court refused to apply a foreign choice-of-law provision because Ohio's law governing covenants not to compete differed from Wisconsin's: "Wis. Stat. § 103.465 makes it the public policy of this state that '[a]ny ... restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant ... as would be a reasonable restraint.' On the other hand, Ohio law permits selective enforcement or judicial modification of an unreasonable covenant not to compete so as to enforce the covenant deemed reasonable." 2004 WI App 118, ¶ 15, 274 Wis. 2d 500, 508-09, 685 N.W.2d 373, 377 (Wis. Ct. App. 2004). The same is true here: Kansas law allows courts to reform agreements to the extent they are unreasonable, while Wisconsin takes the "red pencil" approach and strikes the entire covenant. *Puritan-Bennett Corp. v. Richter,* 8 Kan. App. 2d 311, 315-16, 657 P.2d 589, 593 (Kans.

3

App. Ct. 1983) ("if an agreement is unreasonable in scope but otherwise enforceable, the court may alter its terms to shape a remedy which affords the plaintiff the contemplated protection."). Accordingly, I conclude that applying Kansas law to this dispute would offend Wisconsin public policy. Wisconsin law therefore applies.[2]

**B. Reasonableness of the Non-Compete Clause**

It is well established that Wisconsin law disfavors employment covenants that restrict the ability of employees to engage in their chosen pursuit. *Heyde Cos., Inc. v. Dove Healthcare, LLC,* 2002 WI 131, ¶ 13, 258 Wis.2d 28, 654 N.W.2d 830 (Wis. 2002) ("[T]he fundamental right of a person to make choices about his or her own employment is well-established. '[N]o one has the legal right ... to deprive a person of the right to labor for whomsoever he will, with the consent of such other.'" (citation omitted). To be enforceable, a covenant must:

> (1) be necessary for the protection of the employer, that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; and (5) not be contrary to public policy.

*Streiff v. Am. Family Mut. Ins. Co.,* 118 Wis. 2d 602, 613, 348 N.W.2d 505, 511 (1984).

On the other hand, courts must accept that, in some cases, employees are perfectly rational actors entitled to reach agreements with their employers, even if they later regret them. Here, Newcomer asserts that the clause at issue is not a run-of-the-mill non-compete attempting to restrain

---

[2]Newcomer argues that Wis. Stat. § 103.465 does not apply because the agreement here was reached after Plaintiff was already employed, not as part of an original negotiation for employment. It is unclear why that would be relevant, however. By its terms, the statute applies to covenants by "an assistant, servant or agent not to compete with his or her employer . . ." Wis. Stat. § 103.465. Moreover, the case Newcomer cites was a dispute between two businesses over a production agreement, not an employer and an employee over an employment contract. *Cty. Materials Corp. v. Allan Block Corp.,* 431 F. Supp. 2d 937, 950 (W.D. Wis. 2006) .

4

trade for a wide range of employees; instead, it was an agreement with a key employee (the funeral director) tailored to the narrow and reasonable purpose of preventing Schetter from using confidential information she learned at Newcomer to later compete with her employer.

**1. Geography**

Schetter and Lyndahl first argues that Section 7(a) of the agreement is unreasonable because it imposes a restriction not just within 25 miles of Green Bay, but "any other location owned or operated by any of the corporations" listed in the preamble. (ECF No. 1-1 at ¶ 7(a).) Newcomer, in rather summary fashion, disputes this, arguing that the contract only limits the employee to working within 25 miles of the establishment at which she was actually employed. But the clear terms of the agreement provide a bar on working within "a radius of 25 miles of the funeral home in which Employee is employed *or* any other location owned or operated . . ." (ECF No. 1-1 at ¶ 7(a).)

Newcomer also argues that the movants have not established the locations of any other funeral homes owned or operated by Newcomer-affiliated entities, and thus at the pleadings stage we do not know the actual scope of the clause. The Movants respond that it doesn't matter because the clause at issue is *per se* unreasonable. Relying on the unpublished case of *Cottonwood Fin., Ltd. v. Reid*, they assert that bans on working near locations merely owned by the employer—as opposed to the actual location the employee worked at—are necessarily unreasonable. 2008 WI App 83, ¶ 12, 312 Wis. 2d 481, 751 N.W.2d 903 (Wis. Ct. App. 2008). In that case, which dealt with an employee at a payday loan store, the clause applied to any store where the employee had worked, and by its plain terms that meant it applied even around stores where the employee had filled in only for a few days. Thus, although the employee's home store was in Green Bay, she was barred from

5

working in or near Wausau, Hudson, and Sheboygan, merely because she had worked at those locations on a intermittent basis. The court of appeals found the clause overbroad. "It is absurd for Cottonwood to imply that after three days in Wausau or four days in Hudson, clients would be prepared to drive up to two hundred miles in one direction simply to follow Reid to Green Bay instead of continuing to do business at the local Cottonwood location." *Id.*

*Cottonwood* was a case about customer loyalty: "Cottonwood asserts that its covenant is necessary because customers build rapport with the individuals behind the counter, not the lending company." *Id.* Thus, the noncompete was alleged to be necessary to prevent an employee from building a rapport with a customer and then, presumably, luring that customer over to a new employer. (Possibly underlying the outcome is the questionable premise that customers at payday loan stores would develop meaningful relationships with store employees.) Here, however, Newcomer isn't asserting a customer loyalty kind of interest, at least at this stage. Instead, it asserts that as the director of its Green Bay funeral home, Schetter was privy to all sorts of confidential business information and proprietary practices, and it is reasonable for the company to try to prevent her from capitalizing on that inside knowledge. Ultimately, the desire to prevent her from using inside knowledge and practices logically extends not just to the location at which Schetter worked but to any location owned or operated by the same employer—they would all suffer from Schetter's ability to use Newcomer's confidential business information. And, as Newcomer notes, the pleadings do not explain how geographically broad the clause actually is. Based solely on the pleadings, I cannot say that the territorial limits are *per se* unreasonable.

**2. Substantive Scope**

Movants next argue that the restrictive covenant is overly broad because it prevents Schetter
6

from engaging in services "substantially similar" to Newcomer's "programs," even if she did not personally work in a given capacity or retain any confidential information about certain aspects of the business. In short, Movants assert that this is an overbroad "janitor" clause, i.e., that it would preclude Schetter from taking a job as a janitor at a competitor, a position in which she clearly would not be applying any confidential information or trade secrets from her previous employer. "Brass could not work for American National as a claims adjuster or even as a janitor. It is unreasonable for MSI to prohibit Brass from holding *any position* at American National." *Mut. Serv. Cas. Ins. Co. v. Brass,* 2001 WI App 92, ¶ 15, 242 Wis. 2d 733, 743-44, 625 N.W.2d 648, 654-55 (Wis. Ct. App. 2001), overruled on other grounds by *Star Direct, Inc. v. Dal Pra,* 2009 WI 76, ¶ 15, 319 Wis. 2d 274, 767 N.W.2d 898 (Wis. 2009).

Here, however, the clause would not logically prohibit Schetter from working as a janitor. Instead, the clause prohibits the solicitation of any services similar to the "Employer's programs," i.e., funeral parlor services. Working as a janitor is not soliciting funeral services. Read reasonably, the clause simply prohibits Schetter from offering funeral services, a relatively narrow restriction tailored to her employer's specific business. In soliciting and offering funeral services, it is likely that Schetter would be drawing on the store of knowledge she acquired at Newcomer, including all of Newcomer's proprietary practices and information about pricing. Knowledge acquired inside a business is not the sort of thing that can be ignored at will, placed in a kind of mental attic never to be accessed again. Thus, an employer's effort to constrain the ability of its employees to profit from inside knowledge may often prove reasonable.

This is particularly true given the underlying interest at stake. In the typical case, courts have viewed non-competes unfavorably because they are restraints of trade, usually accompanied

7

by a marked inequality in bargaining power. Here, however, we have a high-ranking employee who received additional compensation for agreeing to the non-compete. Presumably many key employees in companies all over the state would readily prefer that such clauses *were* enforceable, because otherwise employers would stop offering additional compensation as an inducement to sign them. Faced with the choice, many key employees such as Schetter herself would rationally take the extra money in exchange for a reasonable restraint on their post-employment activities. Of course with 20/20 hindsight, a thousand dollars seems minuscule, but in many situations the employee stays put and the non-compete clause is never triggered. The employee is happy to keep the additional thousand dollars—or whatever the amount is—and the employer is secure in the knowledge that it may trust its key employees with company secrets. In short, a reasonably drafted non-compete that holds up in court is not just a one-sided victory for employers; it is a means of preserving and enhancing the ability of employees to obtain additional compensation for being key employees in the first place. Without more than we have here, I cannot conclude that the non-compete clause is unreasonable or unduly harsh to the employee.

**C. The Non-Disclosure Clause**

The Movants also challenge a separate clause precluding disclosure of Newcomer's business information. Section 8 of the agreement prevents the employee "at any time" from disclosing "any material matters affecting or relating to the business of" Newcomer "without regard to whether all of the foregoing matters will be deemed confidential . . ." (ECF No. 1-1 at ¶ 8.) Movants argue that this non-disclosure clause is unenforceable because it lacks any kind of time limit—it prevents disclosure of a wide variety of company information "at any time." (*Id.*) Under Wis. Stat. § 103.465, Movants argue, a covenant must have a "specified time" to be enforceable.

8

Case 1:15-cv-01063-WCG   Filed 06/06/16   Page 8 of 10   Document 23

By its terms, § 103.465 does not clearly apply to a non-disclosure agreement because that section is directed towards "covenant[s] . . . not to compete with his or her employer." However, broadly construed, an employee's agreement to keep her employer's business information private is, in effect, a covenant not to compete. "It is clear that Chambers & Owen seeks to restrain competition through use of the non-disclosure provision. It seeks to shield its customer data, programs, and business practices from competitors' eyes . . . This is the essence of a trade restraint; it would be an exercise in semantics to overlook Wis. Stat. § 103.465 merely because paragraph 1 of the agreement is not labeled a 'covenant not to compete.'" *Tatge v. Chambers & Owen, Inc.,* 219 Wis. 2d 99, 112, 579 N.W.2d 217, 222 (1998). The Wisconsin Supreme Court has also found that non-disclosure agreements must have a time limitation: "We also point out that paragraph 7 in its entirety constitutes an unreasonable restraint of trade. That paragraph provides that the employee will never, without time limitation, disclose the list of customers to any person. . . . [T]his provision . . . is unreasonable and void." *Gary Van Zeeland Talent, Inc. v. Sandas,* 84 Wis. 2d 202, 218, 267 N.W.2d 242, 250 (1978).

Movants are thus correct that Section 8, the non-disclosure clause, is void. But this does not mean that Section 7, the "Covenant Against Competition," is also void for that reason alone. Although § 103.465 provides that even reasonable restraints in a restrictive covenant fall upon a finding that any part is unreasonable, the Wisconsin Supreme Court has held that this rule does not apply to covenants that are divisible. *Star Direct, Inc. v. Dal Pra*, 319 Wis. 2d at 306–11. In *Star Direct*, the Court found that the non-disclosure clause and non-compete clauses were in fact divisible since the striking of one would leave the other understandable and independently enforceable. Each could "be read, evaluated, and applied independently." *Id.* at 312. Though it

9

appears the same is true here, the parties have not addressed that issue, and so I decline to rule definitively either way. In any event, it seems clear that Newcomer is not relying on that clause at all. It is not cited in the answer and counterclaims, which rely instead exclusively on the non-compete provision addressed above. (ECF No. 2.) Accordingly, the motion will be granted with respect to the non-disclosure clause but the determination of validity of the non-competition clause must await a more complete record.

**II. Conclusion**

For the reasons given above, the Plaintiff's motion to dismiss the counterclaims is **GRANTED** as to the non-disclosure clause, but **DENIED** as to the non-solicitation clause. The clerk will set the case on the calendar for a telephonic scheduling conference.

**SO ORDERED** this 6th day of June, 2016.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court